## AFFIDAVIT IN SUPPORT OF APPLICATION FOR ISSUANCE OF ARREST WARRANTS



I, Brian R. Lewis, being duly sworn and deposed, states the following:

### INTRODUCTION

1. I am a Special Agent (S/A) for Homeland Security Investigations (HSI) within the United States Department of Homeland Security, and is currently investigating a drug trafficking organization (DTO) engaged in a conspiracy to import and distribute 3,4- Methylenedioxy-N-methcathinone (Methylone), a Schedule I Controlled Substance, into the United States, and to distribute and possess with intent to distribute Methylone in the Eastern District of Virginia, and elsewhere.

2. I make this affidavit in support of a criminal complaints and arrest warrants for: **David Lee JONES and December Isabelle JUSTICE.**

### CRIMINAL OFFENSES

3. This request for criminal complaints and arrest warrants are made in relation to the following offenses occurring in the Eastern District of Virginia and elsewhere:

    a. Conspiracy to Possess with Intent to Distribute Methylone, a Schedule I Controlled Substance, and Ecstasy, a Schedule I Controlled Substance, in violation of Title 21, §§ U.S.C., 841 and 846;

### EXPERIENCE AND TRAINING OF AFFIANT

4. I am a Special Agent (S/A) for Homeland Security Investigations (HSI) within the United States Department of Homeland Security, and has been so employed since 2009. I am presently assigned to the Hampton Roads Border Enforcement Security Task Force (HR-BEST), a multi-agency collaborative effort designed to identify, disrupt, and dismantle organizations that engage in transnational criminal activity with a primary focus on narcotics smuggling and has been so

employed since May 2009. Prior to being employed with HSI, I was employed as both an Immigration Enforcement Agent and as a Deportation Officer for U.S. Immigration and Customs Enforcement (ICE) for approximately four years. As this affidavit is being submitted only for the limited purpose of obtaining a criminal complaint, I have not included each and every fact known to the investigative team concerning this investigation. Rather, I have set forth only those facts that are believed to be necessary to establish probable cause for the charges stated below.

5. I make this affidavit in support of an application for a criminal complaint for the following individuals: **David Lee JONES and December Isabelle JUSTICE.**

## FACTS AND CIRCUMSTANCES

6. Since March 2012, I have been investigating the suspected importation of 3,4-Methylenedioxy-N-methcathinone (Methylone), a Schedule I controlled substance, into the United States from China by Cooperating Defendant #1, hereinafter referred to as CD#1. CD#1 was initially identified during the course of another synthetic drug importation investigation conducted by your affiant.

7. On the evening of June 1, 2012, I, along with other members of the Hampton Roads Border Enforcement Security Task Force (HR-BEST) and members of the Portsmouth Police Department's Special Investigation Unit (SIU) conducted a "knock and talk" at the primary residence of CD#1 in Portsmouth, Virginia. CD#1 consented to members of the investigative team entering his residence to conduct an interview with him.

8. CD#1 was apprised of the fact that he was the target of an ongoing federal narcotics investigation and consented to being interviewed by your affiant. Additionally, CD#1 gave members of the investigative team consent to search his residence for contraband.

9. During the consensual interview of CD#1 at his residence, CD#1 admitted to having imported multiple kilograms of Methylone and smaller quantities of 2,5-dimethoxy-4-iodophenethylamine (2C-I) from China. He stated he ordered between 10 or 11 orders since the summer of 2011, ordering three (3) kilograms of Methylone at a time. His most recent order from the Chinese laboratory was in April 2012.

2

10. CD#1 stated that during the summer of 2011, he sold the Methylone he received from China, on his own, to individuals at various "raves" and nightclubs in the Eastern District of Virginia, but after a short period of time doing this, began to wholesale the imported Methylone to an acquaintance, David Lee JONES (JONES) for JONES to distribute. CD#1 represented to JONES that the Methylone was "Molly," a street name for MDMA/Ecstasy.

11. CD#1 stated that the typical sequence of events to place and receive an order of Methylone is as follows:

   a. David Lee JONES expresses his need for a particular quantity of Methylone to CD#1(generally 2-3 kilograms every two to three weeks);
   b. CD#1 makes would contact the Chinese source to confirm pricing and availability and places an order of Methylone;
   c. CD#1 wire transfers funds to the Chinese lab via MoneyGram and sends MoneyGram confirmation number;
   d. The Chinese lab acknowledges receipt of funds via email, ships the package via EMS Worldwide Express Mail, and transmits a tracking number to CD#1 via email;
   e. The package is delivered generally within one week to CD#1 at his residence;
   f. CD#1 receives the package of Methylone via the United States Postal Service, unpacks it, discards outer packing material and notifies JONES that the package has arrived from China; and
   g. JONES retrieves the package from CD#1's residence.

12. According to CD#1, he would "front" multiple kilograms to JONES at a time with the agreement that JONES would re-pay CD#1 $6,000 per kilogram of Methylone he received.

13. On July 12, 2012, CD#1 agreed to place a monitored telephone call to JONES to apprise JONES of the fact that the three (3) kilogram package of Methylone (which CD#1 called "Molly") had just arrived from China. (HR-BEST agents use non-narcotic substances in the three (3) different kilogram sealed Mylar bags for the encounter). Additionally, CD#1 asked JONES if JONES currently had any marijuana for sale. JONES agreed to travel to CD#1's home to

3



retrieve the narcotics and to bring CD#1 a quantity of marijuana.

14. Members of the investigative team established surveillance of JONES' residence and observed JONES exit his residence and travel to CD#1's residence with December Isabelle JUSTICE.

15. Upon arriving at CD#1's residence, JONES delivered a quantity of marijuana and $1,000 to CD#1, and along with JUSTICE, accepted three one-kilogram silver packages of what they both stated that they believed to be "Molly." Molly is a commonly used drug-slang term for the powdered form of MDMA (Ecstacy). Through your affiant's training and experience, your affiant knows that Methylone is often sold as "Molly" to command a higher price. During this encounter, two members of the investigative team covertly monitored this interaction from a location within CD#1's residence. Subsequent to this transaction, both JONES and JUSTICE departed CD#1's residence.

16. During the departure, JONES did not appear to be carrying the three silver packages; however JUSTICE was observed carrying a large grey purse.

17. After departing CD#1's residence, JUSTICE's vehicle was stopped by a marked Portsmouth Police Department vehicle for a traffic violation.

18. Upon arriving on scene, your affiant observed the three silver packages within a large grey purse that was open in plain-view on the driver's seat.

19. Both JONES and JUSTICE were apprised of their *Miranda* rights and subsequently waived these rights in writing. Both JONES and JUSTICE fully admitted to their roles in receiving "Molly" from an unknown foreign country and subsequently distributing it within the Eastern District of Virginia and the District of Maryland.

20. Subsequent to their on-scene interview, both JONES and JUSTICE provided written consent to search their residence at 5010 Johnson Avenue, Portsmouth, Virginia for the presence of contraband.



21. Recovered from the shared bedroom of JONES and JUSTICE were a .32 caliber handgun, a digital scale with suspected narcotic residue on its surface, and a large amount of drug packaging material.

22. During a follow-up interview at his residence, JONES stated that he began selling "Molly" during the summer of 2011 at various raves and clubs within the Eastern District of Virginia and in the District of Maryland. JONES stated that he began purchasing quantities of "Molly" from an individual only known to him as "Keith" during the fall of 2011. JONES further stated that "Keith" told him that the "Molly" came from "overseas", but that "Keith" was not more specific as to which particular country from which the "Molly" originated. JONES stated that he would pay "Keith" $10,000 per three kilogram purchase of "Molly".

23. JONES stated that his first purchase of "Molly" from Keith was approximately one to two ounces for $150 per ounce. Subsequent to this purchase, JONES stated that purchased between one and three kilograms of "Molly" every two weeks from "Keith". JONES stated that he has purchased between fifteen and twenty kilograms of "Molly" from "Keith" over the course of approximately twenty transactions spanning the approximate one year period that he had been buying "Molly" from "Keith".

24. JONES went on to state that he retailed ounce quantities of "Molly" to multiple individuals at various music events such as: "Crystal Method" concerts, "Starscape", and various "Dubstep" and "Techno" concerts within the Eastern District of Virginia and the District of Maryland. JONES estimated that he sold approximately fifteen kilograms of "Molly" to two individuals only known to him as "Billy the Kid" and "Jake Base Rave" over the course of approximately the past year at various locations in the Richmond, Virginia area.

25. In a subsequent interview of December Isabelle JUSTICE, JUSTICE stated that she has been dating JONES for approximately one year, and that she and JONES have been selling "Molly" throughout the course of their relationship. JUSTICE further stated that JONES had been selling "Molly" prior to their relationship as well.



26. JUSTICE stated that she and JONES had been buying quantities of "Molly" from an individual she only knows as "Keith". According to JUSTICE, "Keith" has told her and JONES on numerous occasions that he obtained the "Molly" from "overseas". JUSTICE stated that she and JONES initially would sell "Molly" at various clubs and music events, but that as time went on, she and JONES began selling wholesale quantities of "Molly" to "Billy the Kid". JUSTICE went on to state that "Billy the Kid" lives near Fredericksburg, Virginia, but would generally meet her and JONES near Washington, D.C. or near Richmond, Virginia.

27. JUSTICE stated that "Keith" always "fronted" her and JONES "Molly". The term "front" or "fronted" refers to the act of one individual giving another individual drugs without pre-payment, and for the receiving party to repay the distributing party at a later date. JUSTICE stated that she was both present and an active participant during approximately six to ten transactions between JONES and "Keith". These encounters resulted in JONES and JUSTICE receiving approximately twelve kilograms of "Molly".

28. At the conclusion of each of these encounters, JUSTICE stated that she transported the "Molly" in her purse back to her and JONES' shared residence. According to JUSTICE, upon return to their residence, both JONES and JUSTICE would "start making calls to see who wanted what". JUSTICE stated that she actively participated in weighing multiple ounce quantities of "Molly" for delivery to customers of her and JONES'. JUSTICE stated that she and JONES would always meet their customers in "random spots" to deliver "Molly", and that she has participated in approximately six of these deliveries in the Hampton Roads area of Virginia, and approximately seven to eight deliveries near Washington, D.C. or near Richmond, Virginia.

## CONCLUSION

29. Based on the foregoing, your affiant submits that there is probable cause to believe that David Lee JONES and December Isabelle JUSTICE did knowingly and intentionally conspired to distribute or possess with the intent to distribute 3,4-Methylenedioxy-N-methycathinone (Methylone) and MDMA, both Schedule I controlled substances.



_____
Brian R. Lewis
Special Agent
Homeland Security Investigations

Read and Approved:

_____
Amy Cross
Special Assistant United States Attorney

Sworn and subscribed to before me
On this 13 day of July 2012

_____
United States Magistrate Judge
Norfolk, Virginia Douglas E. Miller
United States Magistrate Judge

7